# EXHIBIT A

1

2

3

4

5

Wyatt A. Lison (SBN – 316775)
**FEINSTEIN DOYLE PAYNE**
**& KRAVEC, LLC**
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Tel.: 412-281-8400
Fax: 412-281-1007
Email: wlison@fdpklaw.com

6

7

*ATTORNEYS FOR PLAINTIFFS*
*AND THE PROPOSED CLASSES*

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

AUG 12 2020

CLERK OF THE SUPERIOR COURT
By _____ OROGERS _____
Deputy

FILE VIA FAX

8

9

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF ALAMEDA**

10

11

12

NIKKI M. ABSKHARON, PETER A.
ABSKHARON, and BARRY
WINOGRAD, on behalf of and themselves
and all others similarly situated,

13

Plaintiffs,

14

15

vs.

16

AIR CANADA,

17

Defendant.

Case No. **RG20071263**

**CLASS ACTION COMPLAINT FOR:**

**(1) Contract**

**(2) "Unlawful" Business Practices in**
**Violation of The Unfair Competition Law**
**("UCL"), Bus. & Prof. Code §§ 17200,** *et seq.*

**(3) "Unfair" Business Practices in Violation of**
**the UCL, Bus. & Prof. Code §§ 17200,** *et seq.*

**(4) Violation of the Consumers Legal**
**Remedies Act ("CLRA"), California Civil**
**Code §§ 1750,** *et seq.*

**(5) Conversion**

**(6) Money Had and Received**

**(7) Restitution Based on Quasi-**
**Contract/Unjust Enrichment**

**DEMAND FOR JURY TRIAL**

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint;
Case No.:

Plaintiffs Nikki M. Abskharon, Peter A. Abskharon, and Barry Winograd ("Plaintiffs"), by their attorneys, bring this class action on their own behalf and on behalf of all others similarly situated ("Class Members") and make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action against Air Canada ("Defendant") arising out of its failure to provide full refunds to consumers whose flights were cancelled or "effectively cancelled" (as defined herein) as a result of the COVID-19 virus.

2.      On December 30, 2019, the Wuhan Municipal Health Commission in Wuhan, China released a notice to medical institutions that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness.  Shortly thereafter, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus or COVID-19.  On January 30, 2020, the World Health Organization ("WHO") officially declared COVID-19 as a "public health emergency of international concern."

3.      In an effort to curb the spread of COVID-19, on January 31, 2020, the U.S. federal government started implementing travel restrictions from China.  Subsequently, the federal government extended travel restriction globally, with the Department of State advising on March 31, 2020, that U.S. citizens should temporarily avoid all international travel, with the exception that U.S. residents abroad should arrange for immediate return to the United States where possible.  On March 11, 2020, WHO declared COVID-19 a pandemic.

4.      Travel, like many activities once routine, has become severely limited, and in some cases, eliminated.  For example, on March 18, 2020, Air Canada announced that it would "gradually suspend the majority of its international and U.S. transborder flights by March 31, 2020," and intended "to continue to serve a small number of international and U.S. trans-border destinations from select Canadian cities after April 1, 2020."[1]  Defendant subsequently announced that "[t]he Government of Canada has restricted

---

[1] https://aircanada.mediaroom.com/2020-03-18-Air-Canada-Provides-Update-on-Ongoing-COVID-19-Response.

Class Action Complaint;
Case No.:

non-essential travel of foreign nationals across its border.  Foreign nationals wishing to enter Canada by air for optional, non-essential or discretionary purposes will not be permitted….”  In other words, although a number of other Air Canada passengers bought tickets for flights that were not officially cancelled by the airline, they were "effectively cancelled" due to governmental restrictions placed on travel from the United States to Canada (and other countries) and vice versa which prevented Air Canada from boarding those passengers on flights to Canada (and other countries) and made it impossible for the travelers to cross the border.

5.     Prior to the COVID-19 outbreak, however, Defendant provided full refunds (including fare and all taxes, as well as certain charges paid for added travel options) among other options "in the event of a flight cancellation or a delay of more than two hours."  In the midst of the COVID-19 pandemic, Air Canada retroactively changed its refund policy and refuses to issue monetary refunds to passengers with cancelled flights.

6.     Instead, Defendant is providing vouchers for the pre-paid flights, even if the purpose for the trip has ended, and even if the individuals have no intention of flying to a destination serviced by Air Canada in the future.  In doing so, Defendant breaches its Terms and Conditions for its contracts of carriage which promise that it will refund customers the full value of their ticket, upon request, for flights cancelled by Air Canada, (regardless of the reasons the cancellation) including if the cancellation was "required for safety purposes." [2]

7.     Additionally, Defendant defies recent guidelines from the U.S. Department of Transportation ("DOT") which issued an "Enforcement Notice" on April 3, 2020 requiring both domestic and foreign airlines to refund tickets for flights cancelled due to COVID-19.  In fact, the DOT's "Enforcement Notice" notes the "longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (*e.g.,* a result of government restrictions)." [3]

---

[2] Despite its refusal to issue refunds for American customers whose flights were cancelled, Air Canada has "quietly changed its refund policy to allow some" European passengers "whose flights were cancelled due to the COVID-19 pandemic to recoup their cash."     *See*   https://www.ctvnews.ca/business/air-canada-offers-refunds-to-some-passengers-with-cancelled-flights-1.4999772.
[3] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf.

8.      The DOT's Enforcement Notice further indicates that, with regard to cancellations, "[t]he focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger."  Therefore, the DOT "continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action." *Id.* (emphasis added).[4]

9.      Defendant has undoubtedly experienced economic hardships as a result of the COVID-19 pandemic and the resulting decrease in demand for air travel.  While Plaintiffs and Plaintiffs' counsel are not numb to this, they bring this action on behalf of individuals also facing severe hardship who, unlike Defendant, have not been granted staggering government relief and whose hard-earned money Defendant is now holding without having provided the flight they booked and contracted.

10.     Indeed, Defendant utilized the emergency wage subsidy offered by the Canadian government, before it ceased participation in this program and laid off tens of thousands of its workers.[5] In addition to the government aid, Defendant will also profit from its unlawful practice of issuing vouchers that are tantamount to interest-free loans rather than refunds for cancelled or effectively cancelled flights. Moreover, because a significant percentage of customers are unlikely to redeem their vouchers, Defendant will likely reap close to a 100% profit margin on many of the unredeemed pre-paid tickets since it will then keep the airfare consumers paid for without providing anything to them in return.  Defendant is essentially using the pre-paid tickets as interest free loans, and in the case of unredeemed vouchers as a forced grant, demanding that its suffering customers provide it with a second bail-out.  As noted by Anna Laitin, director of financial fairness and legislative strategy at Consumer Reports: "[t]he airlines should provide refunds to all customers whose travel plans were impacted by this unprecedented public health

---

[4] Again citing the Enhancing Airline Passenger Protections found at 76 Fed. Reg. at 23129, which cited the July 15, 1996 Industry Letter that stated that "applying . . . nonrefundability/penalty provisions in situations in which the change of flight time or travel date has been necessitated by carrier action or 'an act of god', e.g., where the carrier cancels a flight for weather or mechanical reasons . . . is grossly unfair and it violates 49 U.S.C. 41712, as would any contract of carriage or tariff provision mandating such a result."
[5]     https://business.financialpost.com/transportation/airlines/air-canada-to-stop-emergency-wage-subsidy-and-thousands-of-job-cuts-will-leave-workers-out-in-the-cold-says-union.

3

and economic crisis. With so many Americans out of work and facing financial hardship, a voucher for future travel is simply not appropriate or useful."[6]

11.     Although Air Canada has the legal obligation to provide real refunds, it resorted to changing and retroactively revising its refund policy to provide for a voucher for a future flights.   Such attempts, however, are void and unenforceable against Plaintiffs and Class Members and are contrary to both the Terms and Conditions and public policy, including as evidenced by enforcement notices issued by the DOT.  In fact, because Air Canada cancelled the flights or the flights were effectively cancelled by Air Canada due to government boarder restrictions for COVID-19, Air Canada did not perform the essential purpose of its contracts of carriage with Plaintiffs and the Class, effectively terminating or rescinding those contracts and requiring all monies paid by them for those flights be returned to them.

12.     Plaintiffs seek relief individually, and as a class action, on behalf of all consumers in the United States who purchased Air Canada, Air Canada Rouge or Air Canada Express flights scheduled to operate within, from, or to the United States from March 1, 2020 through the date of a class certification order and who were not provided a full refund after Air Canada cancelled the flights and/or the flights were effectively cancelled.  Plaintiffs seek recovery individually and on behalf of this nationwide class of consumers for Termination of Contract for Failure to Perform Essential Purpose, Breach of Contract, in the alternative, Conversion, Money Had and Received, and for Quasi-Contract/Unjust Enrichment. Plaintiffs also seek relief individually and on behalf of a California subclass, as defined herein, for those counts as well as for Defendant's violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.,* and California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

## **PARTIES**

13.     Plaintiffs Nikki M. Abskharon and Peter A. Abskharon (the "Abskharons") are wife and husband who are citizens of the State of California and the United States, who are not Canadian citizens, and who reside in Los Angeles County.

---

[6]        https://www.washingtonpost.com/travel/2020/05/14/congress-introduces-new-bill-requiring-cash-refunds-airlines-regardless-who-cancels-trip/.

4

14.     Plaintiff Barry Winograd is a citizen of the State of California and the United States, who is not Canadian citizen, and who resides in Alameda County.

15.     Defendant Air Canada is Canada's largest domestic and international airline, with its principal place of business in Montreal, Canada.   Defendant advertises and conducts business throughout the United States, including the State of California.   Defendant's website indicates that "Air Canada, Air Canada Express, Air Canada Rouge and codeshare partner United Airlines serve five airports in California – San Francisco, Los Angeles, San Diego, San Jose and Sacramento – from five Canadian cities: Vancouver, Calgary, Toronto, Montreal and Edmonton with up to 108 non-stop flights per day." [7]

### PLAINTIFFS' EXPERIENCES

16.     On March 11, 2020, Mr. Abskharon purchased five round-trip tickets from Defendant for himself, Mrs. Abskharon, and their three children to travel from Los Angeles International Airport ("LAX") to Toronto Pearson International Airport ("Toronto Pearson Airport").   The purpose of this flight was for a family wedding, meaning that it was non-essential travel.   The flight was scheduled to depart on July 15, 2020 and return on July 22, 2020.   Mr. Abskharon paid $1,605.60 for the tickets, including taxes and fees.

17.     However, as noted above, Canada's border closure is in effect at least through August 21, 2020, and it does not permit travel from the United States unless it is for an essential purpose or the travelers are Canadian citizens.   Because neither of these conditions apply, the Abskharons could not travel on the flights it booked with Air Canada.   In fact, if they chose to show up for the flight, they would have been denied passage by Defendant, or otherwise denied entry into Canada, as Air Canada has notified them and the members of the Class through its website and otherwise.   Therefore, the Abskharons' flight was effectively cancelled by Air Canada.

18.     When the Abskharons  attempted to obtain a full refund for their flight that was effectively cancelled, they were informed that Air Canada would not provide them with a refund, but would instead provide a voucher for a future flight that can only be used within the next 24 months.

---

[7] https://www.aircanada.com/content/aircanada/ca/en/aco/home/about/media/air-canada-usa.html.

Class Action Complaint;
Case No.:

19.     On February 14, 2020, Mr. Winograd purchased tickets from Defendant for himself and his wife to travel from Philadelphia International Airport to Toronto Pearson Airport on March 31, 2020, and to travel from Toronto Pearson Airport to Boston Logan International Airport on April 2, 2020 (he was scheduled to fly on a separate carrier, Delta Air Lines, from Boston to Philadelphia).  Mr. Winograd was travelling to Toronto (and later to Boston) to attend meetings for an organization of which he is an officer.  Mr. Winograd paid a total of $1,181.74 for the tickets, including taxes and fees.  Mr. Winograd purchased these tickets while he was at his home in Alameda County, California.

20.     On March 29, 2020, following the enactment of the border restrictions between the U.S. and Canada, Air Canada cancelled Mr. Winograd's flights via email notification.  In doing so, it indicated that it was an "involuntary cancellation," and that "[f]or flights cancelled due to COVID-19, Air Canada retains the balance of your ticket for future travel within 24 months of your flight cancellation date."  *See* Exhibit 1.  Mr. Winograd has had subsequent communications with Air Canada in which he has sought a full refund for the ticket.  However, Air Canada has refused to provide such a refund.

21.     Mr. Winograd did receive a full refund from Delta Air Lines for the Boston-Philadelphia flight that was cancelled.

22.     Additionally, only after Plaintiffs booked their flight and after the COVID-19 pandemic became manifest, Defendant updated its website to advise (albeit in violation of their contractual obligations, and U.S. regulations and guidance as described *infra*) that only a credit will be offered for cancelled flight.[8]

23.     Unlike its current website, at the time that Plaintiffs purchased their tickets, Air Canada's website represented that "in the event of a flight cancellation or a delay of more than two hours, Air Canada offers you the option of requesting a refund for the unused portion of your ticket or using the unused portion toward future travel . . ."[9]

24.     Plaintiffs' and Class Members' tickets are also subject to the Terms and Conditions of Air Canada's contract of carriage in effect when the tickets were purchased as confirmed by Plaintiffs'

---

[8] https://www.aircanada.com/us/en/aco/home/book/travel-news-and-updates/2020/covid-19.html#cancelled-flight.
[9]   https://web.archive.org/web/20190129111300/https://www.aircanada.com/ca/en/aco/home/fly/flight-information/delayed-flights-and-cancellations/refund-options.html.

Class Action Complaint;
Case No.:

booking confirmations (*see* Exhibits 2 and 3), which states that Defendant "will refund the unused portion of the ticket" when "the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses alternate travel arrangements" if "due to reasons within Air Canada's control or required for safety purposes." *International Tariff General Rules Application to Transportation of Passengers and Baggage*, Issued January 6, 2020 (hereinafter "Terms and Conditions") Rule 100 Sec. (D), page 104. Exhibit 4.  Air Canada modified its Terms and Conditions on June 3, 2020 and June 24, 2020, but did not change this provision.

25.     Based on these provisions and statements, Defendant contractually promised and represented that the tickets Plaintiffs and Class Members purchased would be refunded if a flight was cancelled and/or effectively cancelled (including if the cancellation was "required for safety purposes"). These provisions were part of Plaintiffs' and Class members' contracts of carriage with Defendant, and Plaintiffs relied on Defendant's promises and representations in deciding to purchase the airline tickets, and these promises and representations were part of the basis of the bargain.  Had Plaintiffs known that Defendant would not honor its promise to refund their tickets if the flights were cancelled and/or effectively cancelled (including if the cancellation was "required for safety purposes"), this would have impacted their purchasing decision.  Here, Mr. Winograd's flight was cancelled and the Abskharons' flight was effectively cancelled by Air Canada as a result of the COVID-19 pandemic.   Plaintiffs seek a full refund because they have no intention on travelling to Canada, nor will they use Air Canada in the foreseeable future, meaning that the travel vouchers Defendant offered have no value to them.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction and venue pursuant to Cal. Civ. Code §§ 395.5, 410.10 and 1780(d) over the claims raised in this Complaint. Defendant is doing business in Alameda County as it regularly sells, advertises, markets and/or provides its services in Alameda County and throughout the State of California, with Defendant receiving substantial compensation from such transactions and business activity in this State and County, including as the result of purchases of airline tickets, and the trade and commerce described herein is and has been carried out in part within this State and County. Additionally, the Abskharons are citizens and residents of California who purchased their tickets in

California, with the tickets providing flights from and back to LAX in this State.  Mr. Winograd is a citizen and resident of California and of this County who purchased his tickets from Air Canada in this County. Attached hereto as Exhibit 5 is a declaration in compliance with Cal. Civ. Code § 1780(d).

## FACTS COMMON TO ALL CAUSES OF ACTION

I.     **Air Canada's Corporate Background\***

27.     The inception of Air Canada dates back to 1937 when the Canadian government created Trans-Canada Air Lines (TCA) to provide transcontinental airline services within Canada's borders.[10] Originally, TCA was a wholly owned subsidiary of the government-owned Canadian National Railway Corporation.[11]  In 1965, TCA adopted the name Air Canada, and in 1988 the Canadian government approved its privatization, with the completion of its IPO in October 1988.[12]  By July 1989, Air Canada successfully completed its move to privatization after its second issuance of stock.[13]

28.     Throughout the 1990s, Air Canada went through a series of restructuring and obtained entry into the Japanese market while also opening almost 30 new U.S. routes in 1995.[14] In 1997, Air Canada joined Lufthansa, Scandinavian Airlines System, Thai Airways International, and United Airlines to form the Star Alliance, which linked the member airline's routes and honored each other's frequent flyer miles.[15]  By the late 1990s, Air Canada had record profits, with international fares accounting for more than half of passenger revenue.[16]  In July 2000, Air Canada acquired Canadian Airlines, and later merged the regional carries of both into a single entity called Air Canada Jazz.[17]  Shortly thereafter it launched Zip, a low-fare carrier based in Calgary.[18]

29.     Through its membership in the Star Alliance, Air Canada now offers services to 1,300 airports in 195 countries using a fleet of over 300 aircraft.[19] In 2018, it operated an average of 1,550 scheduled flights each day and carried nearly 51 million passengers to nearly 220 destinations on six

---

[10] https://www.referenceforbusiness.com/history2/35/Air-Canada.html.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] https://www.aircanada.com/content/aircanada/ca/en/aco/home/about/corporate-profile.html.

8

continents.[20] It is the largest airline and the largest provider of "scheduled passenger services in the Canadian market, the Canada-Us transborder market and in the international market to and from Canada."[21]

30.     Air Canada has recently experienced a decade of growth.  In February 16, 2020, Air Canada's President and CEO Calin Rovinescu reported it was the top performing stock on the TSX for the past decade, with a 3,575 percent return.  As of December 31, 2019, Defendant held $5.9 billion in cash, cash equivalents and short-term investments.[22]

## II.     COVID-19 and Air Canada's Cancellations

31.     In January 2020, numerous people were infected with a new virus in Wuhan, China.  The virus spread rapidly throughout China, and in some cases fatally, with the WHO reporting the first cases outside China on January 20, 2020 in Japan, South Korea, and Thailand.  The following day, the first confirmed case was reported in the United States in a Washington State resident who had recently returned from a trip to Wuhan.

32.     The WHO soon declared a global health emergency and named the virus COVID-19, as the death toll in China reached 1,113 and confirmed cases worldwide exceeded 45,000.  As the virus spread, countries around the world began to restrict travel to and from their borders.  For example, on January 31, 2020, travel restrictions affecting domestic and international air travel began when the U.S. federal government restricted travel from China.

33.     On February 29, 2020, the U.S. Government issued a "do not travel" warning for areas most impacted by the virus in Italy and South Korea, and banned all travel to Iran.  On March 11, 2020, while the WHO declared COVID-19 to be a pandemic, the U.S. Government blocked travel from Europe to the United States.

34.     A few days later, President Trump declared a national emergency as states ordered the closings of schools and non-essential businesses across the United States.  The majority of U.S. states soon issued stay-at-home directives, urging residents to refrain from all "nonessential" travel.

---

[20] *Id.*
[21] *Id.*
[22] https://business.financialpost.com/opinion/bob-scott-airline-bailouts-before-passenger-refunds-no-way.

Class Action Complaint;
Case No.:

35.     As the number of confirmed cases increased, so did the restrictions in travel, resulting in a significant decrease in demand for airline travel.[23]  Initially, Defendant responded to the decreased demand by cancelling only selective flights.  For example, on March 18, 2020, in response to the border restrictions imposed by governments, including the U.S. and Canada, Air Canada announced that it would "gradually suspend the majority of its international and U.S. transborder flights by March 31, 2020," and intended "to continue to serve a small number of international and U.S. trans-border destinations from select Canadian cities after April 1, 2020."[24]   At the same time, Air Canada announced that, "affected customers…whose flights are cancelled will receive a full credit valid for 24 months."  *Id.*

36.     Similarly, on March 20, 2020, Canada and the United States issued a joint statement, indicating that "[a]s a result of the COVID-19 pandemic, the United States and Canada are temporarily restricting all non-essential travel across its borders," and explaining that, "'[n]on-essential' travel includes travel that is considered tourism or recreational in nature."  The statement also indicated that the decision was to be "implemented on March 21, 2020, at which time the US and Canada will temporarily restrict all non-essential travel across the US-Canada land border."[25]

37.     On April 21, 2020, Defendant announced that it was suspending "scheduled service to the U.S. after April 26 as a result of the agreement between the governments of Canada and the United States to extend border restrictions by an additional 30 days, effective today," and that it planned to resume flying to the U.S. on May 22, pending additional governmental restrictions.[26]  Additionally, Defendant indicated that it was "waiving change fees for affected customers with bookings during this period to enable them to reschedule their travel with no additional fee."  The announcement also noted that Air Canada had reduced its scheduled flights by over 90 percent since March 16 and that it had maintained limited service to the U.S. "primarily to facilitate the repatriation of Canadians."  *Id.*

---

[23] The United States has become the most severely impacted country, with over 164,000 deaths to date.
[24] https://aircanada.mediaroom.com/2020-03-18-Air-Canada-Provides-Update-on-Ongoing-COVID-19-Response.
[25] https://www.dhs.gov/news/2020/03/20/joint-statement-us-canada-joint-initiative-temporary-restriction-travelers-crossing.
[26] https://aircanada.mediaroom.com/2020-04-21-Air-Canada-to-Temporarily-Suspend-Transborder-U-S-Flights.

Class Action Complaint;
Case No.:

38.     These restrictions remain in effect, as they have been extended through August 21, 2020.[27] This means that "[f]oreign nationals arriving from the U.S. **without symptoms** of COVID-19, will be allowed to enter Canada **only** for non-discretionary travel."[28]

39.     In addition to the large number of individuals whose flights from the U.S. had been cancelled like Plaintiff Winograd, there are numerous other individuals, like the Abskharons, whose flights have not been officially cancelled but are effectively cancelled.  As a result, thousands of passengers who bought tickets from Defendant are no longer able to use them for the travel that they paid for.

40.     Air Canada itself has recognized that U.S. citizens are not permitted to travel to Canada unless such travel is essential.  Specifically, on June 11, 2020, Air Canada posted on its website that "[t]he Government of Canada has restricted non-essential travel of foreign nationals across its border. **Foreign nationals wishing to enter Canada by air for optional, non-essential or discretionary purposes will not be permitted**. Non-essential travel includes travelling for purposes such as tourism, sightseeing, recreation, entertainment, social visits and religious functions."[29]

41.     That website further clarified the restrictions, noting that non-Canadian citizens could be denied entry into Canada when flying if the travel was for "optional or discretionary purposes," and that if they were denied such entry they would have to make travel arrangements at their own expense:

> **All foreign nationals (a person who is not a Canadian citizen or a permanent resident) must be aware that they may be refused entry to Canada when travelling by air from the United States.** The Government of Canada has restricted non-essential travel across its border, and therefore **travel that is for optional or discretionary purposes**, including tourism, recreation, or entertainment purposes **will not be permitted. If a foreign national travelling from the United States is denied entry into Canada, further travel arrangements will be at the traveler's expense.**[30]

42.     That website also has a section titled "Before boarding your flight to Canada," which notes that, "prior to boarding a flight from the United States, all foreign nationals will be required to confirm to

---

[27]         https://www.canada.ca/en/public-health/services/diseases/2019-novel-coronavirus-infection/latest-travel-health-advice.html#_Canada-U.S._border_restrictions_1.

[28] *Id.* (emphasis in original).

[29]https://www.aircanada.com/us/en/aco/home/book/travel-news-and-updates/2020/new-entry-requirements.html#/   (emphasis added).

[30] *Id.* (emphasis added).

11

Air Canada that they have read the entry requirements and travel restrictions described above and that, to the best of their knowledge, they are not prohibited from entering Canada under any Government of Canada Emergency Order related to COVID-19."

43.     Air Canada has also acknowledged that, "[g]overnment measures have deprived and continue to deprive significant numbers of Air Canada's passengers of their privilege to move across borders," and that, pursuant to governmental restrictions, "Non-Canadian nationals, including U.S. citizens, were largely banned from entering the country."[31]

44.     Authority issued by the Canadian government clarifies that airlines cannot permit individuals like Plaintiffs to board flights from the United States to Canada.  On June 19, 2020,  Canada's Governor General in Council, pursuant to Canada's Quarantine Act, issued the Minimizing the Risk of Exposure to COVID-19 in Canada Order (Prohibition of Entry into Canada from the United States) ("June 19 Order").[32]  Section 3(1) of the June 19 Order prohibited foreign nationals "from entering Canada from the United States if they seek to enter for an optional or discretionary purpose, such as tourism, recreation or entertainment."[33]

45.     On June 30, 2020, Canada's Minister of Transport issued an Interim Order Respecting Certain Requirements for Civil Aviation Due to COVID-19, No. 2 ("June 30 Order").[34] Section 2(3) of the June 30 Order requires that air carriers "operating a flight to Canada departing from the United States must notify every foreign national boarding the aircraft for the flight that they may be prohibited from entering Canada" pursuant to the June 19 Order.  Section 3(3) requires that, before boarding a flight to Canada from the United States, foreign nationals must confirm that "they are not prohibited from entering Canada under the" June 19 Order.  Furthermore, Section 2(4) of the June 30 Order requires such air carriers to notify individuals boarding flights that they are subject to a monetary penalty if they provide a false or misleading confirmations.  Finally, Section 4 of the June 30 Order prohibits air carriers from permitting

---

[31] July 6, 2020 Answer of Air Canada in Proceedings Before the U.S. Department of Transportation, *Horovitz v. Air Canada*, Docket DOT-OST-2020-0063, p. 6-7.
[32] A copy of this Order can be found at: https://orders-in-council.canada.ca/attachment.php?attach=39438&lang=en.
[33] *Id.*
[34] A copy of this Order can be found at: https://www2.tc.gc.ca/eng/mediaroom/interim-order-respecting-certain-requirements-civil-aviation-due-covid-19-no-2.html.

12

"a person to board the aircraft for the flight if the person is a competent adult and does not provide a confirmation that they are required to provide under" Section 3(3).

46.     Transport Canada subsequently issued guidance, effective June 30, 2020, titled "COVID-19: Guidance material for air operators managing travellers during the check-in procedure at international airports" ("June 30 Guidance").[35]  It provides airlines with a series of questions to ask travelers, which "can be asked through automated check-in kiosks, agents at the check-in counter, or any other means, at the discretion of the air operator."  It also includes a decision tree to help airlines "determine whether the air traveller will be permitted to board the aircraft to Canada based on his/her responses to the following questions; a refusal to respond to any of the questions will result in a denial of boarding."  If a traveler indicates that they are not a Canadian citizen, and that they do not meet an exception for foreign nationals, **airlines are required to deny boarding to the traveler:**

**Sample questions for online check-in or counter check-in**

1.  Are you a Canadian citizen, permanent resident, registered Indian under the *Indian Act*, a protected person under the *Immigration and Refugee Protection Act* or are you transiting* through Canada?
    o   If "Yes", proceed to Health Check and Temperature Screening
    o   If "No", proceed to #2

2.  Do you meet one of the exceptions for foreign nationals made under emergency orders pursuant to the *Quarantine Act*? (see Annex A)
    o   If "Yes", proceed to question #3
    o   If "No", deny boarding

3.  Are you travelling for optional or discretionary purposes, including tourism, recreation or entertainment purposes?
    o   If "Yes", proceed to question #4
    o   If "No", proceed to question #5

4.  Are you travelling to Canada to be with an immediate family member who is a Canadian citizen or permanent resident and do you have proof of your intention to stay in Canada for a period of at least 15 days?
    o   If "Yes", proceed to question #5
    o   If "No", deny boarding

---

[35] The June 30 Guidance can be found at https://tc.canada.ca/en/initiatives/covid-19-measures-updates-guidance-issued-transport-canada/air-operators-managing-travellers-during-check-procedure-international-airports.

Class Action Complaint;
Case No.:

5. Do you confirm that you are aware of the Government of Canada travel restrictions and that, to the best of your knowledge, you are not prohibited from entering Canada?
   o If "Yes", proceed to Health Check and Temperature Screening
   o If "No", deny boarding
   o

47.   This process is also detailed in a Decision Tree Model provided with the June 30 Guidance:



48.   The Canada Border Services Agency ("CBSA") has summarized the restrictions on non-Canadian citizens attempting to enter Canada as such:

**Arriving from the United States**

If you are a foreign national arriving from the United States, to enter Canada, you must prove to the CBSA that you:

• are travelling for a non-discretionary (essential) purpose or are only transiting or are an immediate family member

• are not presenting signs or symptoms of COVID-19

• have a plan to quarantine for 14 days, unless exempted

The Canada-U.S. temporary border restriction put in place on March 21, 2020, at 12:01 am EDT continues. **All discretionary (non-essential) travel remains prohibited.**[36]

49.     Air Canada therefore recognizes that, under these restrictions, travelers who, like the Plaintiffs, are (1) not Canadian citizens, and (2) who are flying to Canada for non-essential purposes will be denied entry into Canada, **and are not permitted to board their flight**.   This means that such individuals have had their flights "effectively cancelled," even if Air Canada itself did not specifically cancel the flight.  If such passengers show up at the airport on the scheduled date of their flight, they would not be permitted by Air Canada to board those flights.  If, for some reason, **in violation of Canadian law,** Air Canada did allow them to board the plane, they would be denied entry into Canada once they had landed, forcing them to make their own travel arrangements (at their own expense) to get home.  Therefore, the passage for which such individuals contracted for with Air Canada, their carrier, has been made an impossibility.

50.     Accordingly, there are thousands of individuals in the U.S. who purchased Air Canada airline tickets and who have not, and will not, be using those tickets to fly because Air Canada cancelled or effectively cancelled their flights.

**III.     Defendant's Unfair And Deceptive Practices**

51.     Defendant is refusing to abide by its contractual and regulatory obligations by forcing customers, like Plaintiffs and Class Members, to accept a voucher instead of offering a refund.  In most cases, this voucher proves useless as customers like Plaintiffs who purchased their tickets for a specific

---

[36] https://www.cbsa-asfc.gc.ca/services/covid/non-canadians-canadiens-eng.html (emphasis in original).

Class Action Complaint;
Case No.:

event or purpose which has passed, and who now no longer have any desire or purpose to travel to the destination for which they booked their tickets, or to any other destination where Defendant operates.

52.     Plaintiffs and Class Members are entitled to a full refund of their tickets, and Defendant's failure to do so constitutes unfair and deceptive practices pursuant to 49 U.S.C. §41712.

53.     Air Canada airline tickets are subject to its Terms and Conditions (*i.e.*, contract of carriage) which, at the time Plaintiffs purchased their tickets, stated that Defendant "will refund the unused portion of the ticket" when, "due to reasons within Air Canada's control or required for safety purposes…the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses alternate travel arrangements . . ." Terms and Conditions, Rule 100 Sec. (D),  page 104.  *See* Exhibit 4.[37]

54.     Prior to the COVID-19 outbreak, Defendant's website, consistent with its Terms and Conditions, stated "in the event of a flight cancellation or a delay of more than two hours, Air Canada offers you the option of requesting a refund for the unused portion of your ticket or using the unused



---

[37] Despite Air Canada's efforts to enact policies to prevent customers from obtaining refunds when their flights are cancelled, the most recent version of the Terms and Conditions, which was enacted on June 24, 2020, continues to include the same language that is quoted from the January 6, 2020 version of the Terms and Conditions. *See* https://www.aircanada.com/content/dam/aircanada/portal/documents/PDF/en/International_Tariff_en.pdf, Rule 100, Sec. (D), p. 107.

Class Action Complaint;
Case No.:

1  portion toward future travel . . .," and that such refund "will include your fare and all taxes, as well as

2  certain charges paid for added travel options," as represented in the screenshot below stored in the

3  "Wayback Machine" archives.[38]

4      55.    On or about March 19, 2020, *after* Defendant began to cancel flights due to COVID-19

5  and refused to provide refunds, it retroactively changed the refund policy on its webpage to state, "[i]n the

6  event of a flight cancellation or a delay of more than three hours, ***for situations other than those outside***

7  ***our control***, Air Canada offers you the option of requesting a refund for the unused portion of your ticket,

8  or using the unused portion toward future travel with us. ***Cancellations resulting from the COVID-19***

9  ***crisis are considered outside our control.***" [39] (emphasis added).

10      56.    In response to mounting consumer criticism, on May 22, 2020, Air Canada announced a

11  new refund policy ("May 22 Announcement"), effective June 1, 2020, which provides "cancellation

12  options" which were "retroactive for customers with original travel between March 1, 2020 and June 30,

13  2021."[40]  According to Lucie Guillemette, Air Canada's Executive Vice President and Chief Commercial

14  Officer, "starting June 1 [Air Canada] will offer customers the choice of a travel voucher with no expiry

15  date that is fully transferable or to convert their booking into Aeroplan Miles and get an additional 65%

16  bonus miles."  Specifically, the press release noted that, if Air Canada cancelled a flight, customers had

17  "two new options to choose from:" (1) "An Air Canada Travel Voucher for the remaining value of their

18  ticket that has no expiry date, is fully transferable and retains any residual value or;" (2) "[t]he ability to

19  convert the remaining value of their ticket into Aeroplan Miles, with 65 per cent more value versus the

20  normal rate for buying Miles."  Additionally, "[f]or Air Canada customers with non-refundable tickets

21  making voluntary changes on tickets issued up to June 30, 2020, with an original travel date between

22  March 1, 2020 and June 30, 2021 inclusive, they have the option to choose from the two above new options

23  of an Air Canada Travel Voucher or Aeroplan Miles." *Id.*[41]

24

25  [38]  https://web.archive.org/web/20190129111349/https://www.aircanada.com/us/en/aco/home/fly/flight-information/delayed-flights-and-cancellations/refund-options.html#/web/20190129111349mp_/https://www.aircanada.com/.

26  [39] https://www.aircanada.com/us/en/aco/home/fly/flight-information/delayed-flights-and-cancellations/refund-options.html.
[40]  https://aircanada.mediaroom.com/2020-05-22-Air-Canada-Announces-New-Schedule-Offering-Customers-Wide-Choice-

27  of-Destinations-for-Safe-Travel-this-Summer-and-Expands-Goodwill-Policy.
[41] The May 22 Announcement also noted that "customers with refundable tickets will continue to have the option of refunds"

28  or either of the two new options, and that "new bookings made up to June 30, 2020 can be changed without fees for original travel between March 1, 2020 and June 30, 2021." *Id.*

17

Class Action Complaint;
Case No.:

57.     To the extent that Defendant attempted to change its refund policy, as well as Defendant's attempts to apply any revised policies retroactively to avoid providing refunds to Plaintiffs and Class Members, such attempts are void and unenforceable against Plaintiffs and Class Members and are contrary to the Terms and Conditions.

58.     Air Canada's refusal to provide refunds to customers whose flights have been cancelled or effectively cancelled not only constitutes unfair and deceptive practices pursuant to 49 U.S.C. §41712, it is also contrary to federal regulations, the DOT's Enforcement Notice, the May 12 FAQ, and other applicable guidance from the DOT.

59.     First, Air Canada's refusal to provide refunds constitutes unfair and deceptive practices because it violates the "longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay," an obligation that "does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)," and therefore "the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged."  Enforcement Notice, p. 1. Furthermore, the Enhancing Airline Passenger Protections found at 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011) rejected the notion "that carriers are not required to refund a passenger's fare when a flight is cancelled if the carrier can accommodate the passenger with other transportation options after the cancellation," and found it "manifestly unfair for a carrier to fail to provide the transportation contracted for and then to refuse to provide a refund if the passenger finds the offered rerouting unacceptable…and he or she no longer wishes to travel." *See also* May 12 FAQ[42] ("airlines have an obligation to provide a refund to a ticketed passenger when the carrier cancels or significantly changes the passenger's flight, and the passenger chooses not to accept an alternative offered by the carrier"); and April 21, 2020 DOT Guidance on Refunds ("April 21 DOT Guidance")[43] (indicating that "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to travel," that even passengers with non-refundable tickets are entitled to refunds if "the airline makes a promise to provide a

---

[42] https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf.
[43] https://www.transportation.gov/individuals/aviation-consumer-protection/refunds.

Class Action Complaint;
Case No.:

1  refund or the airline cancels a flight or makes a significant schedule change", and that "[a]irlines must

2  also comply with the promises they make…")

3       60.    Air Canada's refusal to provide refunds constitutes unfair and deceptive practices under 49

4  U.S.C. §41712. *See* Enhancing Airline Passenger Protections at 76 Fed. Reg. 23129 (noting that, for over

5  20 years, the DOT's Aviation Enforcement Office has taken the position "that refusing to refund a non-

6  refundable fare when a flight is canceled and the passenger wishes to cancel is a violation of 49 U.S.C.

7  41712 (unfair or deceptive practices) and would subject a carrier to enforcement action.")  In doing so,

8  DOT cited the Industry Letter of July 15, 1996[44] ("applying . . . nonrefundability/penalty provisions in

9  situations in which the change of flight time or travel date has been necessitated by carrier action or 'an

10 act of god', e.g., where the carrier cancels a flight for weather or mechanical reasons . . . is grossly unfair

11 and it violates 49 U.S.C. 41712, as would any contract of carriage or tariff provision mandating such a

12 result.")  *See also* May 12 FAQ (indicating that the DOT would focus "its enforcement actions on instances

13 where a carrier has disregarded the requirement to offer refunds, failed to honor its refund policies, or

14 where it is determined that the carrier's refund policies or practices are otherwise 'unfair or deceptive'

15 within the meaning of 49 U.S.C. § 41712.")

16      61.    Air Canada's refusal to provide refunds also constitutes unfair and deceptive practices

17 pursuant to 49 U.S.C. § 41712 because it is a retroactive application of a new definition of the term

18 "cancellation" and/or a significant change which disadvantages passengers.  In fact, Air Canada's May 22

19 Announcement regarding its new refund policy specifically indicated that it was "introducing new

20 cancellation options ***retroactive*** to March 1, 2020."[45]

21      62.    However, the DOT's May 12 FAQ emphasized that its "Aviation Enforcement Office

22 would consider a practice of **retroactively applying a new definition of cancellation or significant**

23 **change that disadvantages passengers who purchased tickets under a more generous cancellation**

24 **or significant change definition to be unfair and deceptive**." *Id.* (emphasis added).  The DOT clarified

25 that it "interprets the statutory prohibition against unfair or deceptive practices to cover actions by airlines

26

---

27 [44]   https://www.transportation.gov/airconsumer/choice-of-forum-contract-provisions-fare-penalties-when-carrier-cancels-flight.

28 [45]   https://aircanada.mediaroom.com/2020-05-22-Air-Canada-Announces-New-Schedule-Offering-Customers-Wide-Choice-of-Destinations-for-Safe-Travel-this-Summer-and-Expands-Goodwill-Policy  (emphasis added).

and ticket agents applying changes retroactively to their refund policies that affect consumers negatively." *Id.* Additionally, it emphasized that "[t]he refund policy in place at the time the passenger purchased the ticket is the policy that is applicable to that ticket" and that "[t]he Aviation Enforcement Office would consider the denial of refunds in contravention of the policies that were in effect at the time of the ticket purchase to be an unfair and deceptive practice." *Id.*

63.     By its own admission, Air Canada has created a new definition of cancellation to avoid paying the refunds that it previously promised and contracted to provide to its customers.  There is no doubt that taking away customers' option to receive a refund disadvantages those customers who purchased tickets which were subject to a more generous cancellation policy, as set forth in the Terms and Conditions, as well as the language found on Air Canada's website.

64.     Moreover, Defendant's policy change violates applicable regulations, the Enforcement Notice and other DOT guidance, and thus is unenforceable.  As described above, Air Canada has a contractual obligation to offer consumers a refund when their flights were cancelled or effectively cancelled under the Terms and Conditions in effect when Plaintiffs and Class Members purchased the relevant tickets.  However, Defendant has, at most, offered only vouchers.  Had Plaintiffs known that Air Canada would not honor its promise to refund their tickets if their flights were cancelled or effectively cancelled, this would have impacted their purchasing decision. The materiality of promising to refund cancelled or effectively cancelled flights and then refusing to do so is obvious as customers are not only being refused the services they paid for, they are suffering financial damage due to Defendant's failure to honor its refund obligation.

65.     While it is clear that this constitutes a retroactive change to the terms of the contract between Air Canada and those consumers who purchased tickets prior to the May 22 Announcement (or the date on which Air Canada changed its website terms regarding refunds), it may also constitute a retroactive change for those who purchased tickets *after* that date as well, because, as noted *supra*, the current version of the Terms and Conditions, dated June 24, 2020, continues to indicate that passengers are entitled to refunds when their flights are cancelled.

Class Action Complaint;
Case No.:

66.     Defendant concedes that it changed its refund policy after Plaintiffs had already booked their flights even though such attempted retroactive application of a refund policy violates DOT regulations and guidance.  Air Canada has attempted to justify its actions by claiming that the previous refund policy was a "goodwill customer service policy," although it was in fact a bargained for term of its contract with customers such as Plaintiffs and Class Members, as set forth in its Terms and Conditions.[46]

67.     Countless Air Canada consumers have voiced, and continue to voice, complaints over Defendant's unfair and deceptive refund practices. For example, Defendant's Facebook page is rife with wronged customers asking Defendant to correct its unjust conduct and provide them with their promised refunds, as demonstrated below:[47]



---

[46] *See* July 6, 2020 Answer of Air Canada in Proceedings Before the U.S. Department of Transportation, *Horovitz v. Air Canada*, Docket DOT-OST-2020-0063, p. 9-10.
[47] https://www.facebook.com/pg/aircanada/posts/.

Class Action Complaint;
Case No.:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Most Relevant is selected, so some replies may have been filtered out.

 **Elaine Cohen** Good Morning Air Canada. I am still waiting to hear from you regarding my cancelled flight. Funny you said it was cancelled in September because of Covid, but you are now charging 5000.00 more for the same day!! Did our Prime Minister not say there would be no gouging? Please get back to me. I am a senior on a fixed income and I need a refund!

1w  9

↳ 1 Reply

View 27 more comments                                    2 of 49

↳ 1 Reply

 **Addy Prado** Air Canada, you cancelled my flight on April 4th to Vancouver, and I never received any refund, or at the very least, a credit/voucher. Unfortunately, I only received a credit for one portion of my trip to use by the end of the year, which is basically no time. Very upset.

2d  1

 **Vince Greece** Cool! Now how about you start refunding all the flights YOU canceled. And no I'm not interested in a "credit" that I won't be able to use once your airline goes bankrupt (which I sincerely hope happens after the way your customer service has treated me through this process).

1w  55

↳ 38 Replies

 **David Rowland** My flight was cancelled twice. Of course a refund was refused. I finally rebooked with my "voucher". Then AC had changed the routes, which now makes me have 2 stops, and the fares increased so of course I had to pay a difference in fares even thoug... See More

**Eona Ilson** My flight in September was changed from Milan to Munich!!!! The email indicated it was because of the "government advisory". The email also said I would get a refund if this was not satisfactory which of course it was not. I cancelled my airbnb because I thought this meant that Air Canada was not flying to Milan in September. Then I went online to cancel the flight. There was no option on line for a refund only a voucher. I spent over an hour and a half on the phone waiting for a representative only to be told that I cannot have a refund! I CANNOT HAVE A REFUND FOR A TRIP TO MILAN THAT WAS CHANGE TO MUNICH!!!! This should be illegal!!!!

2d  2

Class Action Complaint;
Case No.:

 **Yukiko Konomi-Girard** What next trip? I haven't even got a response for the message I sent (as per your instruction, Air Canada!) regarding the refund of my canceled flights since March 19!

5h

↳ 1 Reply

 **Zack Zakka** I want my money. I didn't purchase a voucher. Give me an thousands of people their money back.

1w  👍😆 13

↳ 2 Replies

 **Carly Simpson** Anyone actually had any joy with a refund. Offered me taxes back at a quarter of what I paid! They cancelled the flight which isn't even due until mid July and blaming it on the virus! Absolute joke!

4d

 **Marshall Ma** I bought through a third party app, they refused refund (even credit) when my flight was cancelled. They said because AC's policy they couldn't give my money back. Instead, they switched my direct flight to a connection flight. Mess

1w   👍 1

 **Pablo Hernández** This is getting ridiculous... Are you deleting my posts? Could someone get back to me? You've been ignoring me for a month now.

14h   👍 1

 **Stephen Dunsmore** The easiest way is Air Canada's current system whereby you book and pay for flights, Air Canada cancels your flights and steals your money, and you stay home only having had the pleasure of paying!

1w   👍😠😡 17

↳ 2 Replies

 **Joaquim Ferreira** We all need a refund!!! This is a must.

1w

23

Class Action Complaint;
Case No.:







68.     The above customer complaints are only a small sample of complaints voiced regarding Air Canada's cancellation policy, and do not begin to portray the number of customers who have been wronged by Defendant's conduct.  Rather, there are thousands of individuals in the U.S. who purchased Air Canada airline tickets and who have not, and will not, be using those tickets to fly because Air Canada cancelled or effectively cancelled their flights.  In fact, a substantial amount of Air Canada's revenue comes from its flights from/to the U.S., as the U.S. "accounts for 22 per cent of revenues at Air Canada."[48]

69.     Although Defendant has suggested the change in policy was necessitated by events outside of Defendant's control[49], this is of little consolation to Plaintiffs and Class Members who are deprived of the use of their money and interest to account for the customers' loss of the use of their money.  This is

---

[48] https://financialpost.com/news/economy/some-canadian-companies-start-new-year-with-gains-from-u-s-tax-cuts-analysts.
[49] https://paxex.aero/2020/06/air-canada-refund-complaint-dot-dispute/.

24

Class Action Complaint;
Case No.:

particularly weighty given the current state of the economy and unprecedented financial hardships many Americans are facing during the COVID-19 pandemic.

70.     As noted by Xavier Barsalou-Duval, a member of Parliament of the House of Commons, the money of "Canadian airline customers has been 'confiscated' by companies that refuse to reimburse at a time when millions of workers are unemployed due to the COVID pandemic- 19."[50]  Yet, according to Mr. Barsalou-Duval, Air Canada was sitting on $6 billion in cash."[51]  Further, Mr. Barsalou-Duval has indicated that, "[o]f this six billion, 2.6 billion belong to its customers who have often lost their jobs and who are far from having a year's worth of cash in hand."[52]

71.     In stark contrast, Air Canada's President and CEO Calin Rovinescu has indicated that Air Canada possesses sufficient financial resources to enable the company "to fully focus our immediate attention on both the safety and well-being of our customers and our employees and on mitigating the financial impact of the virus."[53]  In a March 16, 2020 press release, Defendant states that, "Air Canada had cash, cash equivalents, short and long investments of $7.1 billion at March 13, 2020," as well as an unencumbered asset pool of around $5 billion.  *Id.*  Moreover, according to Air Canada's treasurer Pierre Houle, Air Canada "entered 2020 on the doorstep of investment grade with a very strong balance sheet, low net leverage and significant liquidity, before the COVID-19 pandemic and government-imposed quarantines and border restrictions destroyed demand and depleted cash. Air Canada's strong relative position has allowed us to navigate through this crisis and we have full confidence that we will be successful in maintaining liquidity at levels more than sufficient to meet the challenges and take advantage of the opportunities ahead."  He also indicated that, following recent transactions, "Air Canada has now raised approximately $5.5 billion in 2020 and expects to end the second quarter of 2020 with at least $9 billion in liquidity."[54]

---

[50]     https://nationalpost.com/news/politics/growing-number-of-canadians-furious-that-airlines-wont-reimburse-cancelled-travel-due-to-covid-19.
[51] https://westernaviationnews.com/2020/05/19/transport-minister-backs-airline-voucher-policies-covid-pandemic/.
[52] https://westernaviationnews.com/2020/05/19/transport-minister-backs-airline-voucher-policies-covid-pandemic/.
[53] https://aircanada.mediaroom.com/2020-03-16-Air-Canada-Provides-Update-on-Response-to-COVID-19.
[54]     https://aircanada.mediaroom.com/2020-06-22-Air-Canada-Completes-Financing-Transactions-Raising-Additional-1-23-Billion.

25

Class Action Complaint;
Case No.:

72.     Thus, Defendant's refusal to issue refunds to consumers whose flights were cancelled or effectively cancelled constitutes unfair and deceptive conduct which not only violate its contracts and California's CLRA and UCL, but are in direct violation of the DOT Enforcement Notice, as well as other federal guidance and regulations.  Additionally, Defendant's conduct gives rise to claims for breach of contract/rescission, conversion, Money Had and Received, and quasi-contract/unjust enrichment.

## CLASS ACTION ALLEGATIONS

73.     Plaintiffs seek certification of a nationwide class, and a California subclass, pursuant to Cal. Civ. Proc. Code § 382, as defined below (collectively, the "Classes").

74.     Plaintiffs bring this action on behalf of themselves and on behalf of all other persons in the United States who purchased Air Canada, Air Canada Rouge or Air Canada Express airline tickets and were not provided a full refund by Air Canada for cancelled and/or effectively cancelled Air Canada, Air Canada Rouge or Air Canada Express flights scheduled to operate within, from, or to the United States from March 1, 2020 through the date of a class certification order (the "Class").

75.     Plaintiffs also seek to represent a subclass of all members of the Class who purchased the relevant tickets in California ("California Subclass" or "Subclass").

76.     Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

77.     Plaintiffs reserve the right to re-define the Classes prior to class certification, or to seek certification of one or more multi-state classes.

78.     The proposed Classes are so numerous that it is impractical to bring them all before the Court.  Upon information and belief, there are thousands of members of the Classes.  Therefore, individual joinder of all members of the Classes would be impracticable.  The precise number of Class Members is unknown to Plaintiffs, but may be easily discovered from Defendant's records.   The Classes are ascertainable because their definitions are objective and specific.  Class Members may be identified through claim forms or receipts.  Additionally, Class Members may be identified through records of airline ticket sales.

Class Action Complaint;
Case No.:

79.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

80.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

81.     Common questions of law or fact exist as to all members of the Classes.  These questions predominate over the questions affecting only individual Class Members.  These common legal or factual questions include:

   a.     Whether Defendant engaged in the false, misleading, and unlawful conduct alleged;

   b.     Whether Defendant's failure to provide the flights to Plaintiffs and Class Members which were booked but were cancelled and/or effectively cancelled is grounds for termination or recission of their contracts of carriage with Defendant entitling Plaintiffs and Class Members to the return of the purchase price they paid;

   c.     Whether Defendant contractually or otherwise promised to refund customers for flights that were cancelled and/or effectively cancelled;

   d.     Whether Defendant has a practice of denying refunds to Class Members for cancelled and/or effectively cancelled flights;

   e.     Whether Defendant's practice of denying refunds to customers on flights that were cancelled and/or effectively cancelled breaches its contracts with Plaintiffs and Class Members, and is otherwise unfair, deceptive, and/or misleading; and

   f.     The appropriate measure of damages, restitutionary disgorgement, and/or restitution.

82.     Plaintiffs' claims are typical of the claims of the Class, in that they are consumers who purchased Air Canada airline tickets in the United States that were promised and represented to be refundable by Defendant if cancelled, but Defendant refused to provide a refund after their flights were cancelled or effectively cancelled.  Their claims are also typical of the claims of the California Subclass in that they are  consumers who purchased Air Canada airline tickets in the state of California that were

promised and represented to be refundable by Defendant if the flights were cancelled, but Defendant refused to provide a refund after the flights were cancelled or effectively cancelled.  Plaintiffs, therefore, are no different in any relevant respect from any other Class Member, and the relief sought is common to the Class and the California Subclass.

83.     Plaintiffs are adequate representatives of the Class and Subclass because their interests do not conflict with the interests of the members of the Class and Subclass they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation.  Plaintiffs and their counsel will adequately protect the interests of the Class and Subclass.

84.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual member of the Class and Subclass are small given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct.  Thus, it would be virtually impossible for members of the Class and Subclass to effectively redress the wrongs done to them through individual actions.  Moreover, even if members of the Class and Subclass could afford individual actions, it would still not be preferable to class-wide litigation.  Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the class.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

85.     Further, in the alternative, the action may be maintained as class actions with respect to particular issues.

### **CAUSES OF ACTION**

### **COUNT I**
**Contract (on Behalf of Plaintiffs, the Class, and the Subclass against Defendant)**

86.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

87.     Plaintiffs bring this Count I individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.

88.     Defendant entered into a contract of carriage with Plaintiffs and Class Members where the essential basis of the bargain was to provide the service of airline flights they booked in exchange for money they paid to Defendant.  Plaintiffs and Class Members paid for the flights they booked from Defendant.  Due to no fault of Plaintiffs and Class Members, Defendant failed to provide the flights Plaintiffs and Class Members booked when it cancelled them and/or they were effectively cancelled as described herein.  Thus, the essential purpose of the contract of carriage was never performed by Defendant.  The return of the purchase price to Plaintiffs and Class Members is a remedy where, as here, the contract of carriage has been effectively terminated or rescinded by Defendant's failure to provide the flight they booked.  Plaintiff and the Class seek termination or recission of their contracts for flights they booked with Defendant that it cancelled or effectively cancelled, and that Defendant return the amounts Plaintiffs and Class Members paid for those cancelled or effectively cancelled flights.

89.     In the event termination or recission of the contract of carriage is not available, Plaintiffs and Class Members alternatively seek damages from Defendant for its breach of contract.  Defendant entered into a contract of carriage with Plaintiffs and Class Members to provide the service of airline flights they booked in exchange for money they paid to Defendant, and to provide a refund in the event that it should cancel such flights.

90.     Defendant breached this contract when it did not provide Plaintiffs and Class Members with the bargained for flights or the bargained for refunds.

91.     In the Terms and Conditions, Defendant promised and represented that it would refund customers for flights which were cancelled or effectively cancelled, and Plaintiffs and Class Members relied on these representations and contractual promises in deciding to purchase the airline ticket, and these representations and contractual promises were part of the basis of the bargain.

92.     In refusing to provide refunds as required by the Terms and Conditions, and then changing its refund policy in violation applicable laws, government regulations, orders and/or requirements as

specified herein, Defendant breached its contractual promises and representations to its customers. Plaintiffs and Class Members have not received the benefit of their bargain because Defendant failed to perform its contracted obligation to provide the flight they booked and then refused to refund the purchase price.

93.     Plaintiffs' and the Class Members' airline tickets are subject to Defendant's Terms and Conditions which state that Defendant, "will refund the unused portion of the ticket" when "the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses alternate travel arrangements . . .due to reasons within Air Canada's control or required for safety purposes." Terms and Conditions, Rule 100 Sec. (D), page 104. *See* Exhibit 4.   This contractual provision has been the same for all Air Canada international flights booked since at least January 6, 2020.  This provision is consistent with federal regulations and guidance which require refunds if an airline cancels a flight.

94.     Defendant cancelled and/or effectively cancelled Plaintiffs' and the Class' flights "due to reasons within Air Canada's control or required for safety purposes."  Specifically, Defendant either: a) chose to cancel Plaintiffs' and the Class' flights, b) was required to cancel their flights due to government imposed COVID-19 restrictions, or c) effectively cancelled their flights to other countries by notifying Plaintiffs and the Class of the government imposed COVID-19 travel restrictions that would prevent them from entering those countries, and, as a result of these travel restrictions, Defendant was unable to board them on their flight.

95.     Defendant breached this contract when it did not provide Plaintiffs and Class Members with the bargained for flights, and when it failed to provide the bargained for refunds as specified herein, and, instead, attempted to retroactively change customers' contracts to eliminate their right to such a refund in violation its contracts, applicable laws, government regulations, orders and/or requirements as specified herein.

96.     Defendant's breach has caused Plaintiffs and Class Members to suffer injury by having paid money and not having received the benefit of the bargained for flights or refund.

## COUNT II
### "Unlawful" Business Practices in Violation of The UCL, Bus. & Prof. Code §§ 17200, *et seq.*) (on Behalf of Plaintiffs and the Subclass against Defendant)

97.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

98.     Plaintiffs bring this Count II individually and on behalf of the members of the Subclass.

99.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

100.     The statute "prohibits 'unlawful' practices 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.'"  *Khan v. CitiMortgage, Inc.,* 975 F. Supp. 2d 1127, 1144 (E.D. Cal. 2013) (*quoting Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 438 (1994)).

101.     As described herein, Defendant violated, and continues to violate applicable federal regulations and DOT guidance by failing to provide refunds to individuals who purchased tickets for its flights that were cancelled or effectively cancelled, and hence has also violated and continues to violate the "unlawful" prong of the UCL.  Furthermore, Defendant's actions also constitute unlawful business practices in violation of the UCL because, among other things, and as described *infra*, they also violate the CLRA.

102.     By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

103.     Through its unlawful acts and practices, Defendant has obtained money from members of the Subclass.  As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all members of the Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein.  Otherwise, the Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT III**
**"Unfair" Business Practices in Violation of The UCL, Bus. & Prof. Code §§ 17200, *et seq.*)**
**(on Behalf of Plaintiffs and the Subclass against Defendant)**

104.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein

105.    Plaintiffs bring this Count III individually and on behalf of the members of the Subclass.

106.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

107.    A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

108.    As described herein, Defendant's refusal to provide refunds to individuals whose flights were cancelled or effectively cancelled pursuant to its recently implemented "refund policies", despite the fact that it is required to do so by the federal regulations, DOT guidance, and its contracts with Class Members, constitutes unfair business acts or practices.  As described *supra*, Defendant's refusal to provide refunds to customers, and attempting to retroactively change customers' contracts to eliminate their right to such refunds, constitutes unfair practices.

109.    The gravity of the harm to Plaintiffs and members of the Subclass resulting from such unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Defendant for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Defendant has engaged, and continues to engage, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

110.    Through its unfair acts and practices, Defendant has obtained money from Plaintiffs and members of the Subclass.  As such, Plaintiffs have been injured and request that this Court cause Defendant to restore this money to Plaintiffs and the members of the Subclass, to disgorge the profits Defendant has made on flights that were cancelled or effectively cancelled, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein.  Otherwise, the Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an Order is not granted.

**COUNT IV**
**Violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750,**
***et seq.* (on Behalf of Plaintiffs and the Subclass against Defendant)**

111.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

112.    Plaintiffs bring this Count IV individually and on behalf of the members of the Subclass. Plaintiffs assert only a claim for injunctive relief under Count IV at this time as further explained below.

113.    This cause of action is brought pursuant to the CLRA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Civil Code § 1770 (a).

114.    Defendant has violated the CLRA by, as described *supra*, misrepresenting that it did not have an obligation to refund customers for flights it cancelled or were effectively cancelled, when in fact it does, and such actions constitute unfair and deceptive practices.  The foregoing unfair and deceptive acts and practices are misleading in a material way because they fundamentally misrepresent Defendant's Terms and Conditions, as well as consumers' rights to receive a refund for their cancelled or effectively cancelled flights.  As described *supra*, Defendant's refusal to provide refunds to customers, and attempting to retroactively change customers' contracts to eliminate their right to such refunds, also constitutes unfair and deceptive practices.

115.    Plaintiffs and each member of the proposed Subclass are "consumers" within the meaning of Civil Code § 1761(d).

116.    The purchases of airline tickets from Defendant by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and these airline tickets constitute "services" within the meaning of Civil Code § 1761(b).

117.    Defendant has violated, and continues to violate, the CLRA by engaging in unfair and deceptive acts and practices in at least the following respects, by indicating that the airline tickets were refundable upon cancellation, and later refusing to refund the cost of Plaintiffs' and the Subclass' tickets after their flights were cancelled or effectively cancelled:

    a.    In violation of Civil Code § 1770(a)(5), Defendant represented that the services it agreed to provide had characteristics, uses, or benefits (*i.e.*, that the airline tickets were refundable if cancelled by Air Canada) which they did not have;

33

b.      In violation of Civil Code § 1770(a)(7), Defendant represented that the service was a particular standard, quality or grade (*i.e.*, refundable if cancelled by Air Canada), if they are of another (*i.e.*, nonrefundable if cancelled by Air Canada).

c.      In violation of Civil Code § 1770(a)(9), Defendant advertised services (*i.e.,* that the tickets were refundable if cancelled by Air Canada) with the intent not to provide what it advertised; and

d.      In violation of Civil Code § 1770(a)(14), Defendant represented that its transaction conferred or involved rights, remedies, and obligations that it did not have or involve.

118.    Defendant knew or should have known that its representations regarding the tickets and subsequent refusal to issue refunds violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Subclass.

119.    Defendant's actions set forth in this Complaint were done willfully, wantonly and with reckless disregard for the interests of Plaintiffs and the Subclass, and as a result, Plaintiffs and the Subclass have suffered an ascertainable loss of money or property.

120.    Plaintiffs and the members of the Subclass request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code § 1780(a)(2).  Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers will be damaged by Defendants' acts and practices in the same way as have Plaintiffs and the members of the proposed Subclass.

121.    On August 12, 2020, Plaintiffs also sent Defendant a pre-suit notice and demand to describe Defendant's violations of the CLRA ("CLRA Letter").  California Civil Code § 1780 requires that 30 days pass before a claim for damages under the CLRA may be brought.  Once the thirty day period has expired, if Defendant has not provided the relief requested in the CLRA Letter, Plaintiffs intend to amend this Complaint to add a request for damages from Defendant as provided for in Civil Code § 1780.  Nothing in this Complaint should be read to seek damages under Civil Code § 1780.

Class Action Complaint;
Case No.:

1
2

**COUNT V**
**Conversion (on Behalf of Plaintiffs, the Class, and the Subclass against Defendant)**

3    122.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

4    123.    Plaintiffs bring this Count V individually and on behalf of the members of the Class and

5    Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on

6    behalf of the Subclass.

7    124.    Plaintiffs and members of the Class have an ownership interest and right to the monies

8    paid for the tickets for cancelled and effectively cancelled flights sold by Defendant, as well as for the

9    consequential damages resulting therefrom.

10   125.    Defendant has intentionally and wrongly asserted dominion over the payments illegally

11   diverted to them for the cancelled and/or effectively cancelled flights, and consequential damages

12   resulting therefrom.  Defendant has done so every time that Plaintiffs and members of the Class paid to

13   purchase a ticket for a flight that was later cancelled or effectively cancelled by Air Canada as described

14   herein.

15   126.    As a direct and proximate cause of Defendant's conversion, Plaintiffs and members of the

16   Class suffered damages in the amount of the payments made for each time they purchased a ticket for a

17   flight that was cancelled, effectively cancelled, or subject to a significant schedule change by Defendant,

18   and in the amount of consequential damages resulting therefrom.

19
20

**COUNT VI**
**Money Had And Received (on Behalf of Plaintiffs, the Class, and the Subclass against Defendant)**

21   127.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

22   128.    Plaintiffs bring this Count VI individually and on behalf of the members of the Class and

23   Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on

24   behalf of the Subclass.

25   129.    Defendant received money in the form of airline ticket fees that were intended to be used

26   for the benefit of Plaintiffs and the Class.

27
28

35

Class Action Complaint;
Case No.:

130.    Those airline ticket fees were not used for the benefit of Plaintiffs and the Class, and Defendant has not given back or refunded the wrongfully obtained money and airline tickets fees to Plaintiffs and the Class.

131.    Defendants obtained money in the form of airline ticket fees that was intended to be used to provide flights for Plaintiffs and the Class.  Defendant, however, has retained all of the airline ticket fees while the flights that Plaintiffs and members of the Class were supposed to be passengers on were either cancelled or effectively cancelled.

**COUNT VII**
**Restitution Based on Quasi-Contract/Unjust Enrichment**
**(on Behalf of Plaintiffs, the Class, and the Subclass against Defendant)**

132.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

133.    Plaintiffs bring this Count VII individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.  This Count is brought in the alternative.

134.    By falsely and misleadingly representing that its airline tickets were no longer refundable if flights were cancelled or effectively cancelled, Defendant obtained money from Plaintiffs and Class Members.

135.    Defendant has been unjustly enriched at the expense of Plaintiffs and the Class as a result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class.

136.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**JURY DEMAND**

Plaintiffs demand a jury trial on all causes of action and/or issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request an award, relief and entry of a judgment, as follows:

36

1       A.     An order certifying that this action is properly brought and may be maintained as a class

2  action under Cal. Civ. Code § 382; that Plaintiffs be appointed representatives of the Classes; and that

3  Plaintiffs' undersigned counsel be appointed Lead Counsel for the Classes.

4       B.     An order terminating or rescinding the contracts between Plaintiffs and the Classes and

5  Defendant for booked flights not provided due to their cancellation and/or effective cancellation, and

6  directing Defendant to return all amounts Plaintiffs and Class Members paid for those cancelled flights

7  and/or effectively cancelled flights.

8       C.     Restitution in such amount that Plaintiffs and members of the Classes paid to purchase their

9  cancelled and/or effectively cancelled airline tickets.

10      D.     An award to Plaintiffs and all Class Members of compensatory, consequential, incidental,

11  statutory and punitive damages, restitution, and disgorgement, in an amount to be determined at trial.

12      E.     An order requiring Defendant to pay all costs associated with Class and Subclass notice

13  and administration of Classes-wide relief.

14      F.     For attorneys' fees and expenses pursuant to all applicable laws.

15      G.     For pre and post judgment interest.

16      H.     An Order requiring an accounting for, and imposition of, a constructive trust upon all

17  monies Defendant received as a result of the misleading, fraudulent and unlawful conduct alleged herein.

18      I.     For such other and further relief as the Court may deem just and proper.

19

20  Dated: August 12, 2020                 **FEINSTEIN DOYLE PAYNE**

21                             **& KRAVEC, LLC**

22                       By: _____

23                            Wyatt A. Lison (SBN – 316775)

24                       429 Fourth Avenue

25                       Law & Finance Building, Suite 1300
                             Pittsburgh, PA 15219

26                       Telephone: (412) 281-8400
                             Facsimile: (412) 281-1007

27                       Email: wlison@fdpklaw.com

28

Class Action Complaint;
Case No.:

**VOZZOLO LLC**
Antonio Vozzolo (*pro hac vice* to be filed)
345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

***ATTORNEYS FOR PLAINTIFFS***
***AND THE PROPOSED CLASSES***

Class Action Complaint;
Case No.: